IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

USCA Case No. 25-12433
United States District Court, Middle District of Florida
Case No.:  6:23-cv-02471

ELISABETH SERIAN

Plaintiff/Appellant

v.

JETBLUE AIRWAYS CORPORATION

Defendant/Appellee.

**ANSWER BRIEF OF APPELLEE**

<div style="display:flex">

KRISTEN M. FIORE, B.C.S.
Fla. Bar No. 25766
**AKERMAN LLP**
201 East Park Avenue, Suite 300
Tallahassee, Florida 32301
Telephone:  (850) 224-9634
Facsimile:  (850) 222-0103
kristen.fiore@akerman.com

RAYMOND J. BERTI
NY Bar No. 5207782
**AKERMAN LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Telephone:  (212) 880-3800
Facsimile:   (212) 905-6454
raymond.berti@akerman.com

</div>

**ATTORNEYS FOR APPELLEE**

USCA Case No. 25-12433
*Elisabeth Serian v. JetBlue Airways Corporation*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE PURSUANT TO FRAP 26.1 AND 11TH CIR. R. 26.1-1**

Pursuant to F.R.A.P. 26.1 and 11th Cir. R. 26.1-1, Appellee, JETBLUE AIRWAYS CORPORATION, by and through its undersigned counsel, hereby discloses the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock:

1. Akerman LLP (Attorneys for Appellee)

2. Alba, Dawn M. (*Former* Attorney for Appellant in District Court Case)

3. Alba Law Office, P.A. (*Former* Attorneys for Appellant in District Court Case)

4. Edwards, Ashlea A. (*Former* Attorney for Appellee in District Court Case)

5. Berti, Raymond J. (Attorney for Appellee)

6. Fiore, Kristen M. (Attorney for Appellee)

7. JetBlue Airways Corporation (Appellee)

8. Hoffman, Leslie R., U.S. Magistrate Judge

9. Serian, Elisabeth (Appellant, *pro se*)

10. Sneed, Julie S., U.S. Dist. Judge

C-1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is unnecessary because this appeal involves straightforward issues on which the law is clear and that are fully briefed by the parties.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ...............................................C-1

STATEMENT REGARDING ORAL ARGUMENT .................................................i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ..........................................................................iv

STATEMENT OF THE ISSUE........................................................................1

STATEMENT OF THE CASE........................................................................2

    *Nature Of The Case* ...........................................................................2

    *Course Of Proceedings Below*..........................................................2

    *Statement Of The Facts* .....................................................................5

    *Standard Of Review* .........................................................................16

SUMMARY OF THE ARGUMENT ....................................................................17

ARGUMENT ...............................................................................................19

    I.    **THE DISTRICT COURT CORRECTLY DISMISSED
    SERIAN'S FAILURE-TO-ACCOMMODATE CLAIM
    ON THE BASIS THAT SHE UNDISPUTEDLY FAILED
    TO TIMELY EXHAUST HER ADMINISTRATIVE
    REMEDIES** ...........................................................................19

        A.  Serian undisputedly failed to timely file an
        administrative charge of discrimination within 300 days
        of JetBlue's August 5, 2020 denial of her July 16, 2020
        accommodation request ...........................................................19

B.  Serian's alleged appeals on April 13, 2022 and April 18, 2022 for JetBlue to "reconsider" its August 5, 2020 denial of her July 16, 2020 accommodation request did not restart the 300-day statute of limitations ..................................20

C.  Serian's alleged appeals on April 13, 2022 and April 18, 2022 for JetBlue to "reconsider" its August 5, 2020 denial of her July 16, 2020 accommodation request did not extend the 300-day statute of limitations under the "continuing violations" doctrine....................................................26

D.  Serian failed to raise the issue of equitable tolling at the District Court level and thus may not raise it now for the first time on appeal ......................................................................28

CONCLUSION.................................................................................................30

CERTIFICATE OF COMPLIANCE....................................................................31

CERTIFICATE OF SERVICE  ..........................................................................31

iii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abram v. Fulton Cnty. Gov't*,
598 F. App'x 672 (11th Cir. 2015) ...............................................................20, 27

*Access Now, Inc. v. Sw. Airlines Co.*,
385 F.3d 1324 (11th Cir. 2004) ........................................................................29

*Allen v. Tyson Foods, Inc.*,
121 F.3d 642 (11th Cir. 1997) ..........................................................................17

*Alvarez v. Sch. Bd. of Broward Cnty.*,
208 F. Supp. 3d 1281 (S.D. Fla. 2016)..............................................................22

*Atherley v. New York City Dep't of Educ.*,
No. 23-CV-383, 2024 WL 1345741 (S.D.N.Y. Mar. 29, 2024)........................23

*Bost v. Fed. Express Corp.*,
372 F.3d 1233 (11th Cir. 2004) ........................................................................29

*Campbell v. Boies, Schiller, Flexner LLP*,
543 F. Supp. 3d 1334 (S.D. Fla. 2021).........................................................20, 24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................16

*Chandler v. Sheriff, Walton Cnty.*,
No. 22-13698, 2023 WL 7297918 (11th Cir. Nov. 6, 2023).............................22

*Delaware State Coll. v. Ricks*,
449 U.S. 250 (1980)..........................................................................................25

*Durham v. Atlantic City Elec. Co.*,
2010 WL 3906673 (D.N.J. Sept. 28, 2010).......................................................25

*E.E.O.C. v. Joe's Stone Crabs, Inc.*,
296 F.3d 1265 (11th Cir. 2002) ........................................................................19

*Ellis v. England*,
    432 F.3d 1321 (11th Cir. 2005) ........................................................................17

*Everett v. Grady Mem'l Hosp. Corp.*,
    703 F. App'x 938 (11th Cir. 2017) ................................................................26

*Fickling v. United States,*
    507 F.3d 1302 (11th Cir. 2007) ......................................................................16

*Freedom Def. Fund v. President of United States*,
    71 F.4th 888 (11th Cir. 2023) ........................................................................15

*Health Freedom Def. Fund, Inc. v. Biden*,
    599 F. Supp. 3d 1144 (M.D. Fla. 2022).........................................................15

*Helmke v. City of Port St. Lucie*,
    No. 22-cv-14398, 2023 WL 3178561 (S.D. Fla. April 12, 2013)
    *report and recommendation adopted*, No. 22-14398-CIV,
    2023 WL 3172613 (S.D. Fla. May 1, 2023)................................................20, 27

*Hipp v. Liberty Nat'l Life Ins. Co.*,
    252 F.3d 1208 (11th Cir. 2001) ......................................................................26

*Holifield v. Reno,*
    115 F.3d 1555 (11th Cir. 1997) ......................................................................17

*Holland v. Carnival Corp.*,
    50 F.4th 1088 (11th Cir. 2022) ..................................................................26, 27

*Hurley v. Moore,*
    233 F.3d 1295 (11th Cir. 2000) ......................................................................28

*Justice v. United States,*
    6 F.3d 1474 (11th Cir. 1993) ......................................................................29, 30

*Kennedy v. S. Univ.*,
    No. 4:21-CV-172, 2022 WL 628541 (S.D. Ga. Mar. 3, 2022)..........................28

v

*Koslosky v. Am. Airlines, Inc.*,
   456 F. Supp. 3d 681, 688 (E.D. Pa. 2020),
   *aff'd,* No. 20-2081, 2022 WL 4481537 (3d Cir. Sept. 27, 2022) ......................24

*Martin v. Sw. Va. Gas Co.*,
   135 F.3d 307 (4th Cir. 1998) .........................................................................25

*Mendez v. City of Chicago*,
   No. 03-CV- 8182, 2004 WL 2980598 (N.D. Ill. Dec. 22, 2004),
   *aff'd sub nom. Mendez, Adm'r of Est. of v. City of Chicago*,
   174 F. App'x 342 (7th Cir. 2006) .................................................................25

*Mercer v. Se. Pennsylvania Transit Auth.*,
   26 F. Supp. 3d 432 (E.D. Pa. 2014),
   *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015)....................25

*Monroe v. Rocket Mortg.*, LLC,
   No. 8:22-CV-1834, 2024 WL 4288066 (M.D. Fla. Sept. 25, 2024) ..................22

*Muckenfuss v. Tyson Fresh Meats, Inc.,*
   No. 3:19-CV-536, 2023 WL 1965041 (N.D. Ind. Feb. 13, 2023)....................24

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002).......................................................................................27

*Novella v. Wal-Mart Stores, Inc.*,
   459 F. Supp. 2d 1231, 1234 (M.D. Fla. 2006),
   aff'd, 226 F. App'x 901 (11th Cir. 2007) ........................................................22

*Owens v. Governor's Off. Of Student Achievement*,
   52 F.4th 1327 (11th Cir. 2022) ......................................................................22

*R.S.B. Ventures, Inc. v. F.D.I.C.*,
   514 F. App'x 853 (11th Cir. 2013) ....................................................................6

*Sandvik v. United States,*
   177 F.3d 1269 (11th Cir. 1999) .....................................................................29

*Shields v. City of Fort Lauderdale*,
   50 F.4th 1088 (11th Cir. 2022) ......................................................................26

vi

*Steed v. Head,*
    219 F.3d 1298 (11th Cir. 2000) ................................................................28

*Sturniolo v. Sheaffer, Eaton, Inc.*,
    15 F.3d 1023 (11th Cir. 1994) ................................................................30

*\*United States v. Trainor,*
    376 F.3d 1325 (11th Cir. 2004) ................................................................28

*Walker v. Darby*,
    911 F.2d 1573 (11th Cir. 1990) ................................................................17

*Walker v. Jones*,
    10 F.3d 1569 (11th Cir. 1994) ................................................................29

*\*Wallace v. Shands Teaching Hosp. & Clinics, Inc.*,
    No. 1:20-CV-126, 2021 WL 11680311 (N.D. Fla. Jan. 21, 2021)....................27

*Weber v. Cnty. Of Lancaster*,
    No. 4:17-CV-3117, 2019 WL 1437004 (D. Neb. Apr. 1, 2019) ........................24

*Whitehead v. BBVA Compass Bank*,
    979 F.3d 1327 (11th Cir. 2020) ................................................................17

*Williams v. Lincoln Fin. Grp.*,
    No. 1:17-CV-50, 2018 WL 3536419 (N.D. Ind. July 23, 2018) ........................24

## STATUTES AND CODE PROVISIONS

29 U.S.C. § 633(b) ................................................................................ 19

42 U.S.C. § 2000e-5(e)(1)...................................................................... 19

## RULES AND REGULATIONS

11th Cir. R. 26.1-1 ................................................................................C-1

Fed. R. App. P. 26.1 ..............................................................................C-1

Fed. R. App. P. 32(a)(5)..................................................................................31

Fed. R. App. P. 32(a)(6)..................................................................................31

Fed. R. App. P. 32(a)(7)(B) ............................................................................31

Fed. R. App. P. 32(a)(7)(B)(iii) ......................................................................31

## OTHER AUTHORITIES

*CDC calls on Americans to wear masks to prevent COVID-19 spread,
Centers for Disease Control and Prevention,* July 14, 2020,
https://archive.cdc.gov/#/details?url=https://www.cdc.gov/media/
releases/2020/p0714-americans-to-wear-masks.html.................................................9

*CDC Issues Federal Quarantine Order to Repatriated U.S. Citizens at
March Air Reserve Base*, Centers for Disease Control and Prevention,
January 31, 2020, https://archive.cdc.gov/www_cdc_gov/media/releases/
2020/s0131-federal-quarantine-march-air-reserve-base.html ................................. 5

*CDC Museum COVID-19 Timeline*, Centers for Disease Control and
Prevention, https://www.cdc.gov/museum/timeline/covid19.html#:~:text=
April%203%2C%202020,when%20outside%20of%20the%20home ......................6

*Considerations for wearing cloth face coverings: help slow the spread of
COVID-19*, Centers for Disease Control and Prevention, June 28, 2020,
https://stacks.cdc.gov/view/cdc/90553 ....................................................................8

*COVID-19: Updated Interim Occupational Health and Safety Guidance for
Air Carriers and Crews*, Federal Aviation Administration Safety Alert for
Operators, May 11, 2020, https://www.icao.int/safety/CAPSCA/COVID19Docs/
SAFO20009.pdf ........................................................................................................8

https://www.whitehouse.gov/briefing-room/presidential-
actions/2021/01/20/executive-order-protecting-the-federal-workforce-and-
requiring-mask-wearing ...........................................................................................12

https://www.tsa.gov/news/press/releases/2021/01/31/tsa-implement-executive-
order-regarding-face-masks-airport-security .........................................................12

https://www.tsa.gov/news/press/statements/2022/04/13/tsa-extends-face-mask-requirement-through-may-3-2022............................................................................13

*JetBlue Is the First Major U.S. Airline to Require Masks for Passengers*,
The New York Times, April 28, 2020, https://www.nytimes.com/2020/04/28/
business/jetblue-face-masks-coronavirus.html ..........................................................7

*Pandemic Preparedness in the Workplace and the Americans with
Disabilities Act*, Equal Employment Opportunity Commission,
March 11, 2020, https://www.eeoc.gov/laws/guidance/pandemic-
preparedness-workplace-and-americans-disabilities-act#2 ......................................6

*Proclamation on Declaring a National Emergency Concerning the Novel
Coronavirus Disease (COVID -19) Outbreak*, WhiteHouse.gov,
March 13, 2020, https://trumpwhitehouse.archives.gov/presidential-
actions/proclamation-declaring-national-emergency-concerning-novel-
coronavirus-disease-covid-19-outbreak/....................................................................6

Requirement for Persons to Wear Masks While on Conveyance and at
Transportation Hubs, (Feb. 3, 2021), *available at* https://www.federalregister.gov
/documents/2021/02/03/2021-02340/requirement-for-persons-to-wear-masks-
while-on-conveyances-and-at-transportation-hubs...................................................12

*Use of cloth face coverings to help slow the spread of COVID-19*,
Centers for Disease Control and Prevention, April 3, 2020,
https://stacks.cdc.gov/view/cdc/86411; *see also CDC Museum COVID-19
Timeline*, Centers for Disease Control and Prevention, April 3, 2020,
https://www.cdc.gov/museum/timeline/covid19.html#:~:text=April%203%
2C%202020,when%20outside%20of%20the%20home...........................................7

*Use of cloth face coverings to help slow the spread of COVID-19*,
Centers for Disease Control and Prevention, April 10, 2020,
https://stacks.cdc.gov/view/cdc/87542 ....................................................................7

## <u>STATEMENT OF THE ISSUE</u>

The issue presented is whether the District Court properly granted summary judgment in Appellee JetBlue Airways Corporation's favor and dismissed Appellant Elisabeth Serian's failure-to-accommodate claim under the Americans with Disabilities Act on the basis that she failed to timely exhaust her administrative remedies within 300 days.

## STATEMENT OF THE CASE

### *Nature Of The Case*

This is a failure-to-accommodate case brought under the Americans with Disabilities Act ("ADA") by Appellant Elisabeth Serian ("Serian"), a former Inflight Crewmember (*i.e.*, a flight attendant) employed by Appellee JetBlue Airways Corporation ("JetBlue") from March 2014 until her termination in April 2022 for engaging in undisputed misconduct (which is not the basis of this appeal).

Specifically, Serian's failure-to-accommodate claim is premised on JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request for an exception to JetBlue's mandatory mask policy during the COVID-19 pandemic; and certain remarks she made to various JetBlue employees on April 13, 2022 and April 18, 2022, which she characterizes as appeals that JetBlue "reconsider" its August 5, 2020 decision to deny her July 16, 2020 accommodation request. Regardless of how her April 2022 remarks should be interpreted, it is undisputed that JetBlue did not reconsider its original August 5, 2020 decision and instead terminated Serian on April 26, 2022 for engaging in misconduct on April 13, 2022.

### *Course Of Proceedings Below*

On October 4, 2022, Serian filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in which she challenged JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request, as

2

well as JetBlue's April 26, 2022 decision to terminate her employment for violating a number of the JetBlue's company policies, including its insubordination, cyberbullying, and social media practices. [Doc. 21-2; Doc. 35, at 6; Doc. 68-17; Doc. 68-6, at 39:17-24.][1]

On September 25, 2023, the EEOC dismissed the Charge of Discrimination and issued Serian a Notice of Right to Sue. [Doc. 2, at ¶ 11.]

Serian filed a Complaint with the U.S. District Court for the Middle District of Florida in which she asserted discrimination and retaliation claims relating to her April 26, 2022 termination, as well as a failure-to-accommodate claim premised on JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request. [Doc. 2.]

JetBlue moved to dismiss the Complaint in its entirety on various grounds, including for failure to timely exhaust administrative remedies. [Doc. 21.] Serian opposed; JetBlue replied to the opposition. [Docs. 29-32.]

The District Court granted JetBlue's motion to dismiss in part and denied it in part, dismissing all of Serian's claims except for one: her failure-to-accommodate claim under the ADA. [Doc. 35.] In relevant part, the District Court found that Serian had plausibly pleaded that she had timely exhausted her administrative remedies,

---

[1] This brief cites the District Court docket entries by docket and page number (*e.g.* [Doc 1, at 1] refers to docket entry 1 at page 1) and Serian's principal brief by page number (*e.g.*, [IB at 1] refers to page 1 of Serian's principal brief).

ruling that her allegation that "she 'filed her EEOC grievance with the EEOC' and 'complied with all pre-filing requirements' is sufficient to survive a motion to dismiss.'" [Doc. 35, at 6.]

Thereafter, during the course of written discovery on her single surviving claim, Serian admitted that (1) she first requested an accommodation from JetBlue in July 2020; (2) JetBlue denied that accommodation request in August 2020; and (3) Serian did not ever request another accommodation during her employment with JetBlue. [Doc. 40; Doc. 68-10, ¶¶ 1-5; Doc. 68-18, ¶¶ 2-3, 5.] Put simply, Serian undisputedly admitted that (1) her failure-to-accommodate claim is premised on JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request, *i.e.*, an act which occurred 790 days before she filed her October 4, 2022 Charge of Discrimination; and (2) she did not subsequently request any additional accommodations during her employment with JetBlue. [*Id.*]

JetBlue's counsel promptly raised the issue of the untimeliness of Serian's failure-to-accommodate claim with Serian's then-counsel of record. [Docs. 39-40.] Shortly thereafter, Serian's counsel withdrew from the case. [Docs. 39, 41.] Nevertheless, Serian continued prosecuting the action *pro se*.

JetBlue filed a motion for judgment on the pleadings on the grounds that Serian's failure-to-accommodate claim was untimely. [Doc. 47.] Serian filed an opposition. [Doc. 66.]

4

JetBlue filed a motion for summary judgment, arguing that Serian's failure-to-accommodate claim should be dismissed on three grounds: (1) Serian had undisputedly failed to timely exhaust her administrative remedies; (2) Serian was undisputedly not a "qualified individual" within the meaning of the ADA; and (3) Serian's accommodation request undisputedly posed an "undue hardship." [Docs. 67-68.] Serian filed an opposition. [Doc. 69.] JetBlue filed a reply. [Doc. 70.]

The District Court issued an order granting JetBlue's motion for summary judgment. [Doc. 71.] Specifically, the District Court found that Serian had undisputedly failed to timely exhaust her administrative remedies and thus her failure-to-accommodate claim was time-barred. [*Id.*]

The District Court entered judgment in favor of JetBlue. [Doc. 72.] This appeal follows. [Doc. 74.]

### *Statement Of The Facts*

Serian was employed by JetBlue between March 2014 through April 2022. [Doc. 2, at ¶¶ 14, 39-49.]

On January 31, 2020, the Secretary of Health and Human Services declared COVID-19 – a highly contagious respiratory virus that is believed to have begun spreading in or around December 2019 – a public health emergency.[2]

---

[2] *See CDC Issues Federal Quarantine Order to Repatriated U.S. Citizens at March Air Reserve Base*, Centers for Disease Control and Prevention, January 31, 2020, https://archive.cdc.gov/www_cdc_gov/media/releases/2020/s0131-federal-

On March 11, 2020, the EEOC issued updated guidance relating to accommodation requests in the context of the pandemic in which the agency took the position that, "[b]ased on guidance of the CDC and public health authorities as of March 2020, the COVID-19 pandemic meets the direct threat standard" and that "a significant risk of substantial harm would be posed by having someone with COVID-19, or symptoms of it, present in the workplace at the current time."[3]

On March 13, 2020, President Trump declared the COVID-19 pandemic a national emergency.[4]

On April 3, 2020, the Centers for Disease Control and Prevention ("CDC")

---

quarantine-march-air-reserve-base.html; *see also CDC Museum COVID-19 Timeline*, Centers for Disease Control and Prevention, https://www.cdc.gov/museum/timeline/covid19.html#:~:text=April%203%2C%202020,when%20outside%20of%20the%20home.

This Court can take judicial notice of publicly available information and government websites. *See, e.g.*, *R.S.B. Ventures, Inc. v. F.D.I.C.*, 514 F. App'x 853, 857 n.2 (11th Cir. 2013).

[3] *See Pandemic Preparedness in the Workplace and the Americans with Disabilities Act*, Equal Employment Opportunity Commission, March 11, 2020, https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act#2.

[4] *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID -19) Outbreak*, WhiteHouse.gov, March 13, 2020, https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

issued guidance recommending that all people wear a cloth mask when not at home to help prevent the transmission of COVID-19.[5]

On April 10, 2020, the CDC issued further guidance on the use of cloth masks to help prevent the transmission of COVID-19.[6]

On April 17, 2020, in reliance on this CDC guidance, JetBlue adopted a mandatory mask policy for its Inflight Crewmembers requiring the use of cloth face masks while performing job duties. [Doc. 68-1, ¶ 17; Doc. 68-2.]

On April 28, 2020, JetBlue announced that it was extending its mandatory mask policy to its passengers effective May 4, 2020.[7] JetBlue explained that "it modeled its new policy on a recommendation from the [CDC] that people cover their noses and mouths in public to help slow the spread of the coronavirus." *Id.*

On May 11, 2020, the Federal Aviation Administration ("FAA") issued a

---

[5] *See Use of cloth face coverings to help slow the spread of COVID-19*, Centers for Disease Control and Prevention, April 3, 2020, https://stacks.cdc.gov/view/cdc/86411; *see also CDC Museum COVID-19 Timeline*, Centers for Disease Control and Prevention, April 3, 2020, https://www.cdc.gov/museum/timeline/covid19.html#:~:text=April%203%2C%20 2020,when%20outside%20of%20the%20home.

[6] *See Use of cloth face coverings to help slow the spread of COVID-19*, Centers for Disease Control and Prevention, April 10, 2020, https://stacks.cdc.gov/view/cdc/87542.

[7] *See JetBlue Is the First Major U.S. Airline to Require Masks for Passengers*, The New York Times, April 28, 2020, https://www.nytimes.com/2020/04/28/business/jetblue-face-masks-coronavirus.html.

Safety Alert for Operators in which the agency indicated that it recommended and expected air carriers like JetBlue to adopt safety policies relating to COVID-19, including regarding the mandatory use of cloth masks by employees and passengers.[8]

On June 8, 2020, in reliance on CDC and FAA guidance, JetBlue adopted a policy for its Inflight Crewmembers regarding the use of face shields, clarifying that Inflight Crewmembers could use face shields, but only if they were used "in addition to our mandatory face covering requirement over your nose and mouth." [Doc. 68-1 ¶ 18; Doc. 68-3.] These policies were updated through July 2020 and continued to prohibit the use of face shields without face masks. [Doc. 68-4.]

On June 28, 2020, the CDC issued further guidance on the use of cloth masks to help prevent the transmission of COVID-19.[9] This guidance stated that "[i]t is not known if face shields provide any benefit as source control to protect others from the spray of respiratory particles" and thus the "CDC does not recommend use of face shields for normal everyday activities or as a substitute for cloth face

---

[8] *See COVID-19: Updated Interim Occupational Health and Safety Guidance for Air Carriers and Crews*, Federal Aviation Administration Safety Alert for Operators, May 11, 2020, https://www.icao.int/safety/CAPSCA/COVID19Docs/SAFO20009.pdf.

[9] *See Considerations for wearing cloth face coverings: help slow the spread of COVID-19*, Centers for Disease Control and Prevention, June 28, 2020, https://stacks.cdc.gov/view/cdc/90553.

coverings." *Id.*

On July 14, 2020, the CDC issued further guidance again recommending the use of cloth masks to help prevent the transmission of COVID-19.[10]

On July 16, 2020, Serian requested an accommodation from JetBlue. [Doc. 2, at ¶¶ 19, 23-24; Doc. 68-5; Doc. 68-6, at 58:3-5.] Specifically, Serian requested an exception from the company's mandatory mask policy. [*Id*.] In support of this request, Serian submitted a note from her mother, an Advanced Practice Registered Nurse, stating vaguely that Serian "needs a medical accommodation for not wearing a face mask due to medical issues which would be harmful to her." [Doc. 68-5.] At her deposition, Serian testified that for years before the COVID-19 pandemic she suffered from "high blood pressure and migraines," but that these issues were exacerbated by wearing a face mask at work, which she claims "restrict[ed] my oxygen" and prompted her accommodation request. [Doc. 68-6, at 29:12-14, 41:11-21.]

On July 28, 2020, a member of JetBlue's dedicated workplace accommodations team spoke with Serian regarding her accommodation request. [Doc. 1, at ¶ 20.] Serian requested "not to wear anything" on her face,

---

[10] *See CDC calls on Americans to wear masks to prevent COVID-19 spread*, Centers for Disease Control and Prevention, July 14, 2020, https://archive.cdc.gov/#/details?url=https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html.

notwithstanding the escalating COVID-19 pandemic. [Doc. 68-6, at 48:4-11.] In response, Serian was advised that, while her accommodation request was pending, she could temporarily wear a face shield – as opposed to a face mask – while performing her job duties. [Doc. 1, at ¶ 20; Doc. 68-6, at 15:17-25.]

On July 29, 2020, Serian sent an e-mail to JetBlue's CEO in which she asked him to "immediate[ly] enact a change with these [face] masks"; informed him that she was in the process of seeking approval "not to wear a mask for health and medical reasons"; stated that he has "been silent long enough and now I'm mad[,] [e]specially after the press conference yesterday (7/28) when doctors came out and said there is a cure and to take our masks off"; directed him to "immediately make masks an option" because "[i]t doesn't change the facts that we need to put the fear aside and live our lives"; and opined that this policy shift would "giv[e] freedom back to the people and the crew members." [Doc. 68-6, at 127:19-22; Doc. 68-7.]

On August 5, 2020, JetBlue informed Serian by phone that it denied her accommodation request, a discussion JetBlue then memorialized in an e-mail sent to Serian the next day. [Doc. 2, at ¶ 25; Doc. 21-1; Doc. 68-6, at 74:7-15; Doc. 68-8.]

JetBlue premised its decision to deny Serian's accommodation request on its reliance on guidance from the FAA and CDC regarding the use of face masks (which were recommended to help prevent the transmission of COVID-19) and face shields (which were not). [Doc. 1, at ¶¶ 22-23.] Specifically, JetBlue determined that, based

10

on this guidance, permitting Serian – a flight attendant – to wear nothing on her face (as she requested) or to indefinitely continue wearing only a face shield (as temporarily permitted by JetBlue) while performing her job duties during the COVID-19 pandemic would pose an unreasonable safety risk to herself, other flight crew, passengers, and the general public – and was likely to have serious operational, business, legal, compliance, and reputational consequences. [Doc. 1, at ¶¶ 22-24.]

Nevertheless, JetBlue offered Serian an alternative accommodation – protected leave and position reassignment, pursuant to which employees are guaranteed an interview for any open position within the company to which they apply so long as they meet the minimum qualifications. [Doc. 1, at ¶ 27.]

Serian rejected JetBlue's accommodation offer. [Doc. 1, at ¶¶ 27-28.] Instead, for nearly two years thereafter, Serian continued to comply with JetBlue's mandatory mask policy, although she claims that she experienced migraines as a result of such compliance. [Doc. 2, at ¶¶ 25-31; Doc. 21-1; Doc. 68-6, at 40:5-14.] It is undisputed that Serian did not request another accommodation from JetBlue's dedicated workplace accommodations team after August 5, 2020. [Doc. 1, at ¶¶ 29-30; Doc. 68-10, at ¶ 4.]

On January 20, 2021, President Biden issued Executive Order 13991, which required compliance with CDC guidelines with respect to wearing masks, maintaining physical distance, and other public health measures by on-duty or on-

11

site federal employees; on-site federal contractors; and all persons in federal buildings or on federal lands (the "Federal Mandate").[11]

In response, on January 29, 2021, the CDC issued an Order ("CDC Order") requiring persons to wear masks over the mouth and nose when traveling, *inter alia*, on aircraft and at airports.[12] The CDC Order explicitly excluded face shields from its definition of acceptable face masks.[13]

Similarly, on January 31, 2021, the Transportation Security Administration ("TSA") issued a security directive to implement the Federal Mandate and help mitigate the spread of COVID-19 in the context of air travel ("TSA Security Directive").[14] The TSA Security Directive required that all aircraft operators "ensure that direct employees and contractor employees wear a mask at all times when in

---

[11] *See* "Executive Order on Protecting the Federal Workforce and Requiring Mask-Wearing," (Jan. 20, 2021), *available at* https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/executive-order-protecting-the-federal-workforce-and-requiring-mask-wearing.

[12] *See* "Requirement for Persons to Wear Masks While on Conveyance and at Transportation Hubs," (Feb. 3, 2021), *available at* https://www.federalregister.gov/documents/2021/02/03/2021-02340/requirement-for-persons-to-wear-masks-while-on-conveyances-and-at-transportation-hubs.

[13] Specifically, the CDC did not recommend wearing face shields as an alternative to face masks because they do not snugly cover the mouth and nose. *See id.*

[14] *See* "TSA to implement Executive Order regarding face masks at airport security checkpoints and throughout the transportation network," (Jan. 31, 2021), *available at* https://www.tsa.gov/news/press/releases/2021/01/31/tsa-implement-executive-order-regarding-face-masks-airport-security.

conveyances or in or around transportation facilities under their control."

In or around July/August 2021, Serian sent a second e-mail to JetBlue's CEO regarding "medical freedom" in which she stated that "[c]learly y'all have decided to impose tyranny on our medical freedoms" in reference to the company's mandatory COVID-19 vaccination policy. [Doc. 68-6, at 77:13-78:10; Doc. 68-11.] Serian did not reference face masks or reference her health. [Doc. 68-6, at 120:21-121:25; Doc. 68-11.]

In March 2022, a member of JetBlue's dedicated workplace accommodations team reached out to Serian because the team had unexpectedly received paperwork from Serian's medical provider. [Doc. 68-6, at 256:1-258:7; Doc. 68-9.] The JetBlue employee explicitly asked Serian whether she was requesting a new accommodation. [*Id.*] <u>Serian confirmed that she was not</u>, but was instead attempting to request leave pursuant to the Family and Medical Leave Act of 1993. [*Id.*] The employee also advised Serian that she should reach out to the dedicated accommodations team to the extent she required an accommodation, <u>but Serian did not do so</u>. [*Id.*]

On April 13, 2022, TSA announced that it was extending the TSA Security Directive, which was scheduled to expire April 18, 2022, for another 15 days, up to and including May 3, 2022.[15]

---

[15] *See* TSA extends face mask requirement through May 3, 2022, TSA, available at https://www.tsa.gov/news/press/statements/2022/04/13/tsa-extends-face-mask-requirement-through-may-3-2022.

Later that day, in response to TSA's announcement, Serian sent a third and final e-mail to JetBlue's CEO and senior leadership declaring that, while she had seen "an article…that said the masks will be extended 2 weeks," she would no longer wear a mask or otherwise comply with JetBlue's mandatory mask policy after the previous expiration date of April 18, 2022. [Doc. 21, at 4-5; Doc. 21-1; Doc. 68-6, at 19:14-21; Doc. 68-12.] Specifically, Serian declared that "I am done complying to [*sic*] tyranny"; opined that "[a] mandate is not and never has been a law"; advised that "I have been very vocal about this company being a slave to communism" and that she would no longer "bow[] down to commies"; asserted that she "has documented proof from my doctor how these masks have affected me"; and stated that, "come April 18th I will no longer be wearing a mask." [Doc. 68-6, at 83:18-84:5; Doc. 68-12.] In her Complaint and at her deposition, Serian alleged that, in her view, this April 13, 2022 e-mail represented an effort to have the company reconsider its prior denial of her accommodation request. [Doc. 2, at ¶ 31; Doc. 68-6, at 20:2-21:3; 162:6-21; 255:3-25.]

Serian then attempted to broadly circulate this April 13, 2022 e-mail to every JetBlue Inflight Crewmember, but was unable to do so. [Doc. 68-6, at 116:25-117:3; Doc. 68-13.] Instead, that same day, she posted a screenshot of the e-mail to a Facebook group for JetBlue Inflight Crewmembers, writing that "If you're done then join me and the MANY CMs that are also done." [Doc. 68-6, at 294:17-23; Doc. 68-

14

10, at ¶ 25; Doc. 68-13.]

Just hours later on April 13, 2022, JetBlue suspended Serian's employment for her insubordinate, inappropriate, and unprofessional actions, which violated a number of JetBlue's policies. [Doc. 2, at ¶¶ 35-37; Doc. 68-6, at 85:13-18; Doc. 68-10, at ¶¶ 25-26; Doc. 68-14.] JetBlue further advised her that, on April 18, 2022, she would be required to attend an investigatory meeting at which she would have "the opportunity to further explain the [April 13, 2022] email you sent earlier today." [Doc. 68-6, at 85:19-86:2; Doc. 68-14, at 4-5.]

On April 18, 2022, JetBlue held the investigatory meeting with Serian regarding her recent misconduct, which violated a number of company policies, including its insubordination, cyberbullying, and social media policies.[16] [Doc. 2, at ¶¶ 43, 46; Doc. 68-6, at 85:19-86:2; Doc. 68-10, at ¶ 25; Doc. 68-15.] At this meeting, Serian submitted and discussed a 22-page document that she prepared in which she expressed, alongside a variety of personal political, social, and legal opinions, her frustration with JetBlue's August 2020 decision to deny her accommodation request and her opinion that "the [face] masks are not only ineffective against stopping the spread [of COVID-19] but more so detrimental to

---

[16] By coincidence, also on April 18, 2022, a federal district court invalidated the CDC Order. *See also Health Freedom Def. Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144 (M.D. Fla. 2022), *vacated as moot sub nom. Health Freedom Def. Fund v. President of United States*, 71 F.4th 888 (11th Cir. 2023).

15

our health." [Doc. 68-6, at 90:21-91:16, 93:15-95:10; Doc. 69-15, at 8.] In her Complaint and at her deposition, Serian alleged that, in her view, her remarks at this April 18, 2022 investigatory meeting represented an additional effort to have the company reconsider its prior denial of her accommodation request. [Doc. 2, at ¶ 31; Doc. 68-6, at 20:2-21:3; 162:6-21; 255:3-25.]

On April 26, 2022, JetBlue terminated Serian's employment for her undisputed misconduct on April 13, 2022. [Doc. 2, at ¶¶ 43-51; Doc. 68-16.] There is no record evidence suggesting that JetBlue ever denied or otherwise issued any determination regarding Serian's alleged requests that the company "reconsider" its August 5, 2020 denial of her original July 16, 2020 accommodation request; rather, it is undisputed that JetBlue simply proceeded with suspension and termination given her misconduct. [Doc. 68-14; Doc. 68-16.]

### *Standard Of Review*

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standards used by the district court. *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Significantly, "mere conclusions and

16

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020) (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)). Indeed, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Similarly, "conclusory assertions … , in the absence of supporting evidence, are insufficient to withstand summary judgment." *Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997).

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed Serian's failure-to-accommodate claim and granted summary judgment in JetBlue's favor because Serian undisputedly failed to timely exhaust her administrative remedies.

*First*, the District Court correctly found that Serian's failure-to-accommodate claim, which is undisputedly premised on JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request, was not timely filed with the EEOC within 300 days. Instead, Serian undisputedly waited nearly 800 days, until October 4, 2022, to file a Charge of Discrimination in which she challenged JetBlue's August 5, 2020 denial of her accommodation request.

17

*Second*, and relatedly, the District Court correctly found that Serian's remarks on April 13, 2022 and April 18, 2022, which at best represent an appeal for the company to "reconsider" its August 5, 2020 denial of her July 16, 2020 accommodation request, did not restart the 300-day limitations period. Fundamentally, Serian fails to apprehend that, even if this Court credits her self-serving characterization of her remarks in April 2022 as an appeal for the company to "reconsider" its August 2020 denial of her original July 2020 accommodation request, these communications did not restart or otherwise extend the applicable 300-day statute of limitations in which she was required to exhaust her administrative remedies.

To the contrary, courts across the country have recognized that an employee's request that an employer reconsider a prior denial does not restart the statute of limitations clock. Indeed, ruling otherwise would render the ADA's statute of limitations meaningless; an employee could easily avoid its application by repeatedly renewing their request upon every subsequent denial. Moreover, this Court has explicitly held that the "continuing violation" doctrine does not apply to failure-to-accommodate claims under the ADA. Accordingly, the relevant date on which the ADA's statute of limitations period began running is August 5, 2020 – a conclusion which is fatal to her failure-to-accommodate claim.

*Third*, the District Court correctly found that the "continuing violation" doctrine did not apply to Serian's failure-to-accommodate claim, and thus Serian's April 13, 2022 and April 18, 2022 requests that JetBlue "reconsider" its August 5, 2020 denial of her July 16, 2020 accommodation request did not operate to render her claim timely.

*Fourth*, the District Court correctly declined to consider the issue of equitable tolling, which Serian raises for the first time on appeal. Indeed, Serian did not address this issue in her opposition to JetBlue's motion for summary judgment and did not otherwise develop or proffer any record evidence regarding this issue at the District Court.

For these reasons, the Court should affirm the District Court's decision in all respects.

## ARGUMENT

**I. THE DISTRICT COURT CORRECTLY DISMISSED SERIAN'S FAILURE-TO-ACCOMMODATE CLAIM ON THE BASIS THAT SHE UNDISPUTEDLY FAILED TO TIMELY EXHAUST HER ADMINISTRATIVE REMEDIES.**

**A. Serian undisputedly failed to timely file an administrative charge of discrimination within 300 days of JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request.**

The ADA imposes a 300-day time limit for aggrieved plaintiffs in Florida to file a charge of discrimination. S*ee E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5(e)(1); *see also* 29 U.S.C.

19

§ 633(b). Thus, a plaintiff must file an administrative charge of discrimination within 300 days of their employer's alleged denial of a requested accommodation; "otherwise, the claim is time barred." *Campbell v. Boies, Schiller, Flexner LLP*, 543 F. Supp. 3d 1334, 1344 (S.D. Fla. 2021) (citing *Abram v. Fulton Cnty. Gov't*, 598 Fed. App'x 672, 676 (11th Cir. 2015); *see also Helmke v. City of Port St. Lucie*, No. 22-cv-14398, 2023 WL 3178561, at *2 (S.D. Fla. April 12, 2013) (same).

Here, it is undisputed that Serian's failure-to-accommodate claim is premised on JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request for an exception to JetBlue's mandatory mask policy. [Doc. 2, at ¶¶ 24-25, 27; Doc. 40; Doc. 68-5; Doc. 68-6, at 15:2-16; Doc. 68-8; Doc. 68-10, at ¶¶ 1-5; Doc. 68-18, at ¶¶ 2-3, 5.] It is also undisputed that Serian did not file an administrative charge of discrimination with the EEOC challenging JetBlue's August 5, 2020 denial of her July 16, 2020 accommodation request until October 4, 2022 – nearly 800 days later. [Doc. 68-6, at 39:17-24; Doc. 68-17.]

Accordingly, the District Court correctly found that Serian undisputedly failed to timely exhaust her administrative remedies.

**B.      Serian's alleged appeals on April 13, 2022 and April 18, 2022 for JetBlue to "reconsider" its August 5, 2020 denial of her July 16, 2020 accommodation request did not restart the 300-day statute of limitations.**

In her written discovery responses, Serian admitted that she did not request any subsequent accommodation requests after JetBlue's August 5, 2020 denial of

20

her July 16, 2020 accommodation request. [Doc. 40; Doc. 68-10, ¶¶ 1-5; Doc. 68-18, ¶¶ 2-3, 5.] However, in both her Complaint and later at her deposition, Serian alleged that she did request that JetBlue "reconsider" its August 5, 2020 denial on two occasions in April 2022. [Doc. 2, at ¶ 31; Doc. 68-6, at 20:2-21:3; 162:6-21; 255:3-25; Doc. 68-12; Doc. 68-15, at 10.]

Specifically, Serian alleged that she viewed (1) her April 13, 2022 e-mail to JetBlue's CEO and other senior company leadership (in which she voiced, alongside political commentary, her intention to violate the company's mandatory mask policy); and (2) her remarks at the April 18, 2022 investigatory meeting following her suspension for her April 13, 2022 misconduct (in which she presented a 22-page document she calls a "keynote presentation" that contained, alongside excerpts and screenshots of purported scientific and/or legal materials, a statement that she would comply with JetBlue's mandatory mask policy only "if y'all can prove to me that [wearing] the mask for prolonged periods of time AND at high altitudes poses zero health risk") as requests that JetBlue "reconsider" its prior denial of her accommodation request. [*Id.*] Critically, these communications do not restart the 300-day statute of limitations such to salvage Serian's failure-to-accommodate claim.

As a preliminary matter, these inflammatory and insubordinate remarks, which effectively function as political and social commentary regarding JetBlue's

and the federal government's public health and policy decisions in the midst of a global pandemic (and also include complaints about interpersonal grievances with other JetBlue employees), do not rise to the level of a new, good-faith accommodation request within the meaning of the ADA. *See, e.g.*, *Chandler v. Sheriff, Walton Cnty.*, No. 22-13698, 2023 WL 7297918 (11th Cir. Nov. 6, 2023) (plaintiff's "general discussion" with employer about his "depression and PTSD – with no specific mention that [plaintiff] considered these common conditions disabling and no request by [plaintiff] for accommodations or medical paperwork corroborating his claims – did not put [the employer] on notice" about his disability or trigger employer's duty to accommodate); *Monroe v. Rocket Mortg.*, LLC, No. 8:22-CV-1834, 2024 WL 4288066, at *10 (M.D. Fla. Sept. 25, 2024) (citing *Owens v. Governor's Off. Of Student Achievement*, 52 F.4th 1327, 1334 (11th Cir. 2022)) ("[T]o trigger an employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable.").[17] Indeed, Serian did not

---

[17] And, even assuming these communications did rise to the level of formal accommodation requests, JetBlue need not have granted them given Plaintiff's undisputed misconduct, which prompted her suspension on April 13, 2022 and termination just days later. *See Alvarez v. Sch. Bd. of Broward Cnty.*, 208 F. Supp. 3d 1281 (S.D. Fla. 2016) ("An employer generally is not required to grant a request for reasonable accommodation after the occurrence of workplace misconduct that warrants demotion or termination."); *Novella v. Wal-Mart Stores, Inc.*, 459 F. Supp. 2d 1231, 1234 (M.D. Fla. 2006), aff'd, 226 F. App'x 901 (11th Cir. 2007)

request anything in these communications; she merely declared that she would no longer comply with company policy.

And, tellingly, Serian did not direct these remarks to JetBlue's dedicated accommodations team, and even explicitly informed a member of that team in March 2022 (just a month earlier) whom she had mistakenly e-mailed that she was not requesting a new accommodation. [Doc. 68-6, at 256:1-258:7; Doc 68-9.] Similarly, Serian did not submit any new medical paperwork to JetBlue in connection with these April 2022 communications. Instead, her April 18, 2022 "keynote presentation" simply contained a screenshot of the original note from her mother that Serian submitted to JetBlue in connection with her original July 16, 2020 accommodation request. [Doc. 68-6, at 90:21-91:16, 93:15-95:10; Doc. 68-15, at 10.]

And, even assuming that Serian's April 2022 communications can reasonably be interpreted as an appeal to JetBlue to "reconsider" its August 5, 2020 decision to deny her July 16, 2020 accommodation request, courts across the country have recognized that such appeals do not restart the 300-day statutory limitations period. *See Atherley v. New York City Dep't of Educ.*, No. 23-CV-383, 2024 WL 1345741, at *10 (S.D.N.Y. Mar. 29, 2024) ("Although Plaintiff continued to report her

_____

("Defendant had no obligation to provide Plaintiff with an accommodation during his termination proceeding").

concerns about her employer's failure to accommodate her disabilities after December 16, 2019, the DOE's denials of Plaintiff's subsequent requests are not independent discriminatory acts and therefore do not extend the ADA's 300-day statute of limitations period."); *Muckenfuss v. Tyson Fresh Meats, Inc.,* No. 3:19-CV-536, 2023 WL 1965041, at *1 (N.D. Ind. Feb. 13, 2023) (One cannot revive or extend the [statutory limitations] clock by merely repeating the [accommodation] request."); *Campbell v. Boies, Schiller, Flexner LLP*, 543 F. Supp. 3d 1334, 1344 (S.D. Fla. 2021) ("[A]ny subsequent request for the same accommodation does not, and cannot, restart the statute of limitations period."); *Koslosky v. Am. Airlines, Inc.*, 456 F. Supp. 3d 681, 688 (E.D. Pa. 2020), *aff'd,* No. 20-2081, 2022 WL 4481537 (3d Cir. Sept. 27, 2022) ("The second accommodation request cited the same disability and asked for the same accommodation. It was nothing more than a second bite at the apple."); *Weber v. Cnty. Of Lancaster*, No. 4:17-CV-3117, 2019 WL 1437004, at *3 (D. Neb. Apr. 1, 2019) ("[A]ny subsequent request for the *same* accommodation does not, and cannot, restart the statute of limitations period.") (emphasis in original); *Williams v. Lincoln Fin. Grp.*, No. 1:17-CV-50, 2018 WL 3536419, at *5 (N.D. Ind. July 23, 2018) ("[E]ven assuming for the sake of argument that Lincoln's decision on March 17, 2015, to deny Williams' accommodation request was discriminatory, the company's subsequent refusals to reverse course would not constitute additional discriminatory acts that would extend the statutory

24

limitations period"); *Durham v. Atlantic City Elec. Co.*, 2010 WL 3906673, at *7 (D.N.J. Sept. 28, 2010) ("Plaintiff's persistence in claiming that [defendant should provide him with an accommodation] ... amounts to nothing more than a request that [defendant] reconsider its [original] ... determination."); *Mendez v. City of Chicago*, No. 03-CV- 8182, 2004 WL 2980598, at *4 (N.D. Ill. Dec. 22, 2004), *aff'd sub nom. Mendez, Adm'r of Est. of v. City of Chicago*, 174 F. App'x 342 (7th Cir. 2006) *(*"Though Mendez submitted another doctor's note requesting accommodation in March of 2002, this does not save his claim, as denial of a repeat request for previously denied accommodations does not constitute a new discriminatory act or make the previous denial part of a continuing violation.").

The practical reasoning behind this line of cases is simple: "if an employee could render a [failure-to-accommodate] claim timely by simply renewing a previously denied request, the limitations period would be rendered meaningless." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 442 (E.D. Pa. 2014), *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015); *see also Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980) ("Mere requests to reconsider … cannot extend the limitations periods applicable to the civil rights laws."); *Martin v. Sw. Va. Gas Co.*, 135 F.3d 307, 310 (4th Cir. 1998) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.").

Given this weight of authority, the District Court correctly held that Serian's

communications to JetBlue on April 13, 2022 and April 18, 2022 did not restart or otherwise extend the 300-day statutory limitations clock that began on August 5, 2020.

> **C.** **Serian's alleged appeals on April 13, 2022 and April 18, 2022 for JetBlue to "reconsider" its August 5, 2020 denial of her July 16, 2020 accommodation request did not extend the 300-day statute of limitations under the "continuing violations" doctrine.**

As she did before the District Court, Serian again baselessly argues that the "continuing violation" doctrine applies to her failure-to-accommodate claim, which she contends is rendered timely by her April 2022 "reconsideration" requests. [IB at 8, 15, 18-19.] In so doing, Serian cites inapposite cases and/or misrepresents their holdings. For instance, she cites *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) for the proposition that "continuing ADA violations [are] timely if one act falls within the timing period." [IB at 18.] However, that case does not involve, much less discuss, failure-to-accommodate claims under the ADA; instead, it involves the Age Discrimination in Employment Act ("ADEA"). Similarly, Serian relies on *Everett v. Grady Mem'l Hosp. Corp.*, 703 F. App'x 938, 942 (11th Cir. 2017) – a case involving ADA claims but which otherwise has no reference to the continuing violation doctrine. [IB at 18.] Serian also cites to a purported decision – "*Shields v. City of Fort Lauderdale*, 50 F.4th 1088, 1092 (11th Cir. 2022)" [IB at 18] – which does not appear to exist. Rather, this case cite is attributed to a case captioned *Holland v. Carnival Corp.* – a personal injury case

26

with no connection with the ADA or the continuing violations doctrine. *See Holland*, 50 F.4th at 1088.

In short, Serian once again fails to apprehend that, pursuant to well-established Supreme Court precedent, the continuing violations doctrine is not applicable to "discrete acts" that are "easy to identify," such as an employer's denial of an employee's accommodation request. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Indeed, this Court has explicitly held relied on the Supreme Court's decision in *Morgan* to hold that the continuing violation doctrine does not apply to failure-to-accommodate claims under the ADA, and that the statute of limitations on such claims instead begins to accrue at the time that the plaintiff's request is first denied. *See Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015) ("[T]he continuing violations doctrine was inapplicable in this case because … [plaintiff's] claims, each of which alleged a specific instance of Fulton County's failure to grant her requested accommodations, involved discrete acts of alleged discrimination.")

Moreover, since this Court decided *Abram*, district courts within this circuit have repeatedly dismissed failure-to-accommodate claims on the grounds that the plaintiffs in those actions failed to timely file an EEOC Charge within 300 days of their employers' denial of their requested accommodation. *See Helmke v. City of Port St. Lucie*, No. 22-CV-14398, 2023 WL 3178561, at *2 (S.D. Fla. Apr. 12,

27

2023), *report and recommendation adopted*, No. 22-14398-CIV, 2023 WL 3172613 (S.D. Fla. May 1, 2023); *Kennedy v. S. Univ.*, No. 4:21-CV-172, 2022 WL 628541, at *8 n.17 (S.D. Ga. Mar. 3, 2022); *Wallace v. Shands Teaching Hosp. & Clinics, Inc.*, No. 1:20-CV-126, 2021 WL 11680311, at *2 (N.D. Fla. Jan. 21, 2021).

Accordingly, the District Court correctly held that the "continuing violation" doctrine does not apply to failure-to-accommodate claims under the ADA.

**D.      Serian failed to raise the issue of equitable tolling at the District Court level and thus may not raise it now for the first time on appeal.**

Serian now argues for the first time on appeal that the District Court should have applied the extraordinary remedy of equitable tolling to her failure-to-accommodate claim. Specifically, Serian contends that the District Court ignored supposed evidence of JetBlue's alleged negligence in failing to provide its employees with specific information about the EEOC process and/or because she unaware that she could file an administrative charge of discrimination with the EEOC until after her April 26, 2022 termination. [IB at 17-18.]

As a preliminary matter, this argument is unpreserved for appellate review. *See, e.g.*, *United States v. Trainor*, 376 F.3d 1325, 1335 (11th Cir. 2004) ("Not only is equitable tolling 'an extraordinary remedy which is typically applied sparingly,' *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000), but also, when it is 'raised for the first time on appeal[, it] is not properly before this court,' *Hurley v. Moore,* 233

28

F.3d 1295, 1298 (11th Cir. 2000)); *see also Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994).

Moreover, Serian has failed to establish that equitable tolling is warranted here. Indeed, "[e]quitable tolling 'is an extraordinary remedy which should be extended only sparingly.'" *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) (quoting *Justice v. United States,* 6 F.3d 1474, 1479 (11th Cir. 1993)). Accordingly, equitable tolling is only "appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir. 1999). Here, Serian has not proffered any record evidence that even remotely suggests that the nearly 800-day delay in filing a Charge of Discrimination with the EEOC was caused by such extraordinary circumstances. Instead, she asserts that she was "unaware that her ADA rights had been violated until…[her] termination," which she appears to attribute to JetBlue's alleged negligence in providing her information about her rights. [IB at 17-18.]

However, these assertions are entirely unsupported by any record evidence. Moreover, they are belied by Serian's own statements in 2020 and 2021 in her e-mails to JetBlue's CEO. [Doc. 68-6, at 77:13-78:10, 127:19-22; Doc. 68-7; Doc. 68-11.] Regardless, even if Serian's new allegations were true and supported by record

29

evidence (which they are not), they are not enough to warrant equitable tolling because she undisputedly "had knowledge of facts sufficient to support" her failure-to-accommodate claim on August 5, 2020, when JetBlue denied her accommodation request. *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1026 (11th Cir. 1994); *see also Just. v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (holding that equitable tolling is not appropriate "when the plaintiff does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running.").

Accordingly, the District Court did not err in failing to consider the issue of equitable tolling, and, regardless, this issue is unpreserved.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's judgment in all respects.

Respectfully submitted,

/s/ Kristen M. Fiore
KRISTEN M. FIORE, B.C.S. (25766)
**AKERMAN LLP**
201 East Park Avenue, Suite 300
Tallahassee, Florida 32301
Telephone:  (850) 224-9634
Facsimile:  (850) 222-0103
kristen.fiore@akerman.com

RAYMOND J. BERTI
NY Bar No. 5207782
**AKERMAN LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Telephone:  (212) 880-3800
Facsimile:   (212) 905-6454
raymond.berti@akerman.com

**ATTORNEYS FOR APPELLEE**

30

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 6,688 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, B.C.S.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 24, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will automatically send a copy to all counsel of record in this case registered on the CM/ECF system.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, B.C.S.

31